# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ZAKEE HAMILTON,** | **CIVIL ACTION** |
| **Petitioner,** | |
| **v.** | |
| **SCOTT KLINEFELETER,** | **NO.  23-CV-232** |
| **Respondent.** | |

## <u>MEMORANDUM OPINION</u>

Pro se petitioner Zakee Hamilton ("Petitioner" or "Hamilton") filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2012 criminal conviction in the Court of Common Pleas of Philadelphia County.  He brings two claims for relief: (1) that appellate counsel's failure to appeal an adverse decision in the Superior Court of Pennsylvania violated his rights under the Sixth, Eighth, and Fourteenth Amendments; and, (2) that trial counsel was ineffective for failing to call three specific witnesses, Kennisha Simms, Stephanie Jones, and her sister, Syreeta Jones.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying Hamilton's conviction are as follows:

> During the early morning hours of February 21, 2010, members of a vehicle club congregated at a bar they had reserved to celebrate a birthday.  When they arrived at the bar, the club members discovered that [it] was overbooked.  As the night progressed, different vehicle club members and non-club members began arriving at the bar.  The club members protested to the bar owner about the overbooking and lack of security.  The bar owner retorted by informing them that if they wanted security, they should provide it. Two club members subsequently stationed themselves at one of the doors and began checking IDs and patting non-club members down for weapons.

---

[1] Hamilton's habeas petition offers few details regarding his claims.  Since he is proceeding pro se, the Court liberally construes his claims based on the state court records and the Government's characterization of these claims, to which Hamilton has not objected.  *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002) ("Of course, as this is a *pro se* petition, we will construe it liberally." (citing *United States v. Garth*, 188 F.3d 99, 108 (3d Cir. 1999))).

> Outside the bar, and later in the evening, a fight erupted between [the Jones sisters; a club member, Janaya LaRose; and other women]. During the fracas, two men intervened to break up the fight. After the men separated the women, [Hamilton] punched LaRose. During the ensuing altercation, [Hamilton] pulled out a revolver and raised it at two different men—not the men that intervened. The two men immediately ran in two different directions, and [Hamilton] shot both. One of the men was shot in the back of the thigh; he survived and identified [Hamilton.]
>
> A different witness testified [Hamilton] fired a revolver at least six times at various people. Yet another witness—one of the men [who] initially intervened to break up the fight—testified he saw [Hamilton] holding a revolver, stand over a person lying on the ground, and shoot him twice: once in the abdomen, which struck his aorta causing him to bleed to death, and once in the leg. [Hamilton] also shot a fourth victim, severely wounding her; she identified [Hamilton] from a photo array. In sum, [Hamilton] shot four people, killing one.

*Commonwealth v. Hamilton*, 2014 WL 10790207, at *1 (Pa. Super. Oct. 6, 2014) ("*Hamilton I*").

While witnesses variously described Hamilton's height and whether he had a "tattoo," birthmark, or religious "mark" on his forehead, they consistently identified him as having a beard and distinctive teeth, as well as wearing blue jeans and a green shirt or sweater. Based on this evidence, the jury convicted Hamilton of first-degree murder, aggravated assault, attempted murder, possessing instruments of crime, carrying a firearm in public in Philadelphia, and carrying a firearm without a license. *Id.* That same day, the court sentenced Petitioner to life without parole followed by 25-60 years' incarceration. *Id.* Petitioner filed a timely post-sentence motion challenging, among other things, the weight of the evidence. *Id.* The trial court denied the motion on August 27, 2012. *Id.*

On September 27, 2012, Hamilton filed an appeal from the judgment to the Pennsylvania Superior Court. *Hamilton I*, 2014 WL 10790207, at *2 n.10. He raised two issues: whether, in light of the inconsistencies in the Commonwealth witnesses' testimony, the evidence was insufficient as a matter of law to establish that he was guilty of first-degree murder; and, whether

the verdict was against the weight of the evidence. *Hamilton I*, 2014 WL 10790207, at *2. On October 6, 2014, the Superior Court denied the claims and affirmed the judgment. *Id.* at *1, *3. Hamilton's appellate counsel did not petition the Pennsylvania Supreme Court for review of the Superior Court's decision.

On August 25, 2015, Hamilton filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541 *et seq.*; *Commonwealth v. Hamilton*, 2021 WL 3878645, at *2 (Pa. Super. Aug. 31, 2021) (table opinion) ("*Hamilton II*"). Shortly thereafter, PCRA counsel entered an appearance and filed an amended PCRA petition asserting that appellate counsel was ineffective for failing to file a petition for allowance to appeal in the Pennsylvania Supreme Court, and trial counsel was ineffective for not calling Simms or the Jones sisters to testify at trial. *Hamilton II*, 2021 WL 3878645 at *2. The PCRA court held an evidentiary hearing regarding appellate counsel's failure to petition the Pennsylvania Supreme Court for review and ultimately dismissed that claim. It then directed the Commonwealth to respond to the ineffective assistance of counsel claim. *Id.* The Commonwealth filed a motion to dismiss, arguing the claim lacked merit. *Id.* After reviewing the filings, the PCRA court issued a notice of its intent to dismiss the petition without a hearing pursuant to Pa. R. Crim. P. 907. *Id.* Hamilton filed objections, which the court rejected before dismissing the petition on November 22, 2019. *Hamilton II*, 2021 WL 3878645 at *2.

On December 16, 2019, Hamilton appealed the dismissal of his petition to the Superior Court. *Id*. On appeal, he only raised the ineffectiveness claim regarding the failure to call the Jones sisters as witnesses. *Id.* The Superior Court found the claim was meritless because the record showed the trial judge engaged in a colloquy with Hamilton indicating that he was adequately advised of his right to call witnesses on his behalf and had knowingly and voluntarily

3

declined to do so.  *Id.* at \*4.  The Superior Court further found that, even without the colloquy, the claim failed because Hamilton could not establish counsel was ineffective for declining to call the sisters, as their testimony was not exculpatory, nor was it sufficient to counter the weight of the evidence.  *Id.* at \*5.  Accordingly, the Superior Court affirmed the order dismissing the PCRA petition without a hearing.  *Id.* at \*6.  Hamilton filed a petition for allowance of appeal in the Pennsylvania Supreme Court on April 14, 2022, which was denied.  *See Commonwealth v. Hamilton*, 674 Pa. 326, 327 (Pa. 2022).

On January 11, 2023,[2] Petitioner filed a pro se habeas petition in federal court, again asserting that appellate counsel failed to appeal the Superior Court's decision to the Pennsylvania Supreme Court, and that trial counsel was ineffective for failing to call the Jones sisters and Simms as trial witnesses.[3]  Notably, Hamilton did not include any affidavits or other exhibits with his Petition.

## II.   PRELIMINARY MATTERS

As a preliminary matter, Hamilton's petition is facially untimely.   His deadline to petition for federal habeas was October 3, 2022, but he did not file the present petition until January 11, 2023, approximately 100 days overdue.[4]  *See* 28 U.S.C. § 2244(d)(1).  However, he

---

[2] Hamilton placed his petition in prison mail on January 11, 2023, and it is dated the same day.  The docket, however, indicates a filing date of January 19, 2023.  *See* ECF No. 1.  Because Petitioner was a prisoner at the time of filing, the "mailbox rule" applies, and this Court deems the petition filed on January 11, 2023.  *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (citing *Houston v. Lack*, 487 U.S. 266 (1988)).

[3] Hamilton previously petitioned for federal habeas relief in 2022.  *See Hamilton v. Smith*, 2022 WL 2541349 (E.D. Pa. July 7, 2022) ("*Hamilton III*").  However, his PCRA appeal was still being litigated and there were no grounds for a stay, so his petition was dismissed without prejudice.  *Id.* at \*4-\*8.  Since that petition was not adjudicated on the merits for failure to exhaust state remedies, the present Petition is not "a second or successive petition" which would trigger additional requirements under the Antiterrorism and Effective Death Penalty ("AEDPA"), 28 U.S.C. § 2254(a).  *See Slack v. McDaniel*, 529 U.S. 473, 485-86 (2000) ("A habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits and dismissed for a failure to exhaust state remedies is not a second or successive petition.")

[4] For habeas petitions, the statute of limitations begins running on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1).  That

requests equitable tolling based on alleged abandonment by PCRA counsel.  Specifically,

Hamilton alleges that his PCRA counsel never informed him that the Pennsylvania Supreme

Court had denied him an allowance of appeal in July 2022.  According to his Petition, he did not

learn of this denial until December 28, 2022, when he was interviewing lawyers to serve as

*habeas* counsel.  He then filed the present petition thirteen days later.

Abandonment by counsel is an established ground for equitable tolling.  *See, e.g.*,

*Holland v. Florida*, 560 U.S. 631, 645 (2010); *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013).

However, on the current record, it is not clear whether Hamilton's situation entitles him to

equitable tolling.  Determining whether Hamilton's PCRA counsel abandoned him would require

further development of the record and likely an evidentiary hearing.  Because, as discussed

below, his claims are procedurally defaulted or unsuccessful on the merits, there is no need to

pursue this line of inquiry or determine whether Hamilton is entitled to equitable tolling.

Turning next to appellate counsel's alleged failure to appeal, this claim is procedurally

defaulted.  For federal habeas review of state criminal convictions, a petitioner must show that he

has "exhausted the remedies available in the courts of the State[.]"  28 U.S.C. § 2254(b)(1)(A).

In other words, petitioners must show that each of their claims has been litigated through one

complete round of the state's established appellate review process.  *See id.*; *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 844-45 (1999) ("Comity thus dictates that when a prisoner alleges that

his continued confinement for a state court conviction violates federal law, the state courts

---

period is tolled during other post-conviction petitions and proceedings.  28 U.S.C. § 2244(d)(2).

For Hamilton, this means that his habeas clock began to tick on November 5, 2014, when his appeal rights expired thirty days after the Superior Court affirmed his conviction.  The clock was paused 293 days later, when he filed his PCRA petition, and remained paused until that petition was finally denied on July 12, 2022.  On that date, he had approximately seventy-two days to file his federal habeas petition, *i.e.*, until October 3, 2022.  He filed his present petition on January 11, 2023.

should have the first opportunity to review this claim and provide any necessary relief" (citing *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982))).  If a petitioner fails to exhaust state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . .[,] there is a procedural default for federal habeas purposes."  *Coleman v. Thompson*, 501 U.S. 722, 731, 735 n.1 (1991).

In the present case, Hamilton failed to exhaust state remedies for his failure to appeal claim and the ineffectiveness claim regarding the failure to call Kennisha Simms.

In his PCRA petition, Hamilton presented both of these claims alongside the failure to call the Jones sisters as witnesses. All three were assessed during the PCRA court's initial review and dismissed on the merits.  *See Hamilton II*, 2021 WL 3878645 at *2.  However, during his subsequent PCRA-appeal, Hamilton *only* sought review on the failure to call the Jones sisters; he did not pursue the claims regarding the failure to appeal or to call Simms as a witness.  *See id.* at *2-*3.  Therefore, the Superior Court has not assessed these claims, nor were they ever presented to the Pennsylvania Supreme Court in a petition for review.

Furthermore, it is now impossible for these claims to be analyzed by a state court.  First, Hamilton waived these two claims during his PCRA-appeal, so they are now lost.  *See Thomas v. Elash*, 781 A.2d 170, 177 (Pa. Super. 2001) ("Issues not addressed in the Argument section of an appellate brief are waived for purposes of appeal.").  Even if he had not waived the claims, Hamilton's deadline to appeal the PCRA-trial court's dismissal was December 22, 2019, and so he is time barred from seeking appellate review.  *See* Pa. R. App. P. 903(a) ("[T]he notice of appeal required . . . shall be filed within 30 days after the entry of the order from which the appeal is taken.").

6

He is similarly unable to file a new, successive PCRA petition to pursue these claims. Successive petitions must be filed within one year of final judgment—*i.e.*, by November 6, 2015, for Hamilton—and must fall into one of three exceptions, none of which are present here.[5] *See* 42 Pa. C. S. §9545(b)(1) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final . . ."); *Whitney v. Horn*, 280 F.3d 240, 251-52 (3d Cir. 2002) (acknowledging that a PCRA petition "shall be filed within one year of the date of judgment becom[ing] final. . ."). Because these claims have not gone through a full cycle of state court proceedings, and now, due to tardiness, cannot be assessed by a state court, they are procedurally defaulted. *See Coleman*, 501 U.S. at 731, 735 n.1.

Procedural default may be excused under certain limited circumstances. Default may be forgiven if the petitioner can demonstrate "cause for the default and actual prejudice," or "that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 731, 735 n.1. Generally, attorney error in "state collateral proceedings does not constitute cause to excuse procedural default of a claim later raised in [federal] habeas." *Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015). However, this broad rule has a limited exception: where collateral appeal is the first opportunity to raise a claim of ineffective assistance of trial counsel, and post-conviction counsel is ineffective for failing to raise that claim, good cause may be found. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim

---

[5] These exceptions are: (1) the failure to raise a claim was due to impermissible interference by government officials; (2) "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence;" and, (3) the United States Supreme Court or Pennsylvania Supreme Court have since recognized a new, retroactively applicable constitutional right. 42 Pa. C.S. § 9545(b)(1)(i)-(iii).

7

of ineffective assistance at trial.")  This rule only extends to "initial-review collateral proceedings, not appeals from those proceedings."  *Norris*, 794 F.3d at 404; *Martinez*, 566 U.S. at 16 ("[S]tate collateral cases on direct review from state courts are unaffected by the [exception established] in this case.").

Here, Hamilton offers no argument that his default should be forgiven based on cause or a fundamental miscarriage of justice.  Even if he argued that PCRA counsel's waiver constituted ineffectiveness—and therefore established good "cause for the default"—the waiver occurred at the *appellate* stage of his PCRA.  As such, that argument is squarely foreclosed by *Martinez*.  566 U.S. at 16.  With no other grounds presented or evident, the claims based on appellate counsel's failure to appeal and trial counsel's failure to call Simms as a witness are procedurally defaulted without excuse.

## III.   LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2254(a), a federal court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A habeas petition is governed by AEDPA, and its standard is purposely "difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (*per curiam*) (citations and internal quotations omitted); *Appel v. Horn*, 250 F.3d 203, 209 (3d Cir. 2001) ("Because Appel's habeas petition was filed after April 24, 1996 . . . AEDPA applies here.").

If a state court has already decided a petitioner's claim on the merits, their petition falls under 28 U.S.C. § 2254(d)(1).  Under this "doubly deferential [standard of] judicial review[,]" a federal court may only grant habeas relief if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law.  *Cullen v. Pinholster*, 563 U.S. 170,

8

190 (2011).  A state-court decision is "contrary to" clearly established federal law if the decision

"applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it

confronts a set of facts that is materially indistinguishable from a decision of [the Supreme

Court] but reaches a different result."  *Brown v. Payton*, 544 U.S. 133, 141 (2005).

## IV.    ANALYSIS

### A.  The Failure to Call Witnesses Does Not Constitute Ineffectiveness

Hamilton's remaining claim is for ineffective assistance of trial counsel, based on the

failure to call the Jones sisters as witnesses.

To show ineffective assistance of counsel, a petitioner must satisfy a two-prong test by

demonstrating that counsel's representation fell below an objective standard of reasonableness,

and that such deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S.

668, 687 (1984); *Harrington v. Richter*, 562 U.S. 86, 104 (2011).  Courts may conduct this

analysis in any order, and "if [a petitioner] makes an inadequate showing as to one of these

components, then [courts] do not need to examine the other."  *Gaines v. Superintendent Benner*

*Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022).

Generally, to satisfy the prejudice inquiry, a petitioner must demonstrate that, but for

counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding

would have been different.  *Id.* at 686-87, 693-94.  "Error is more easily excused if the evidence

of the defendant's guilt is overwhelming."  *United States v. Zarintash*, 736 F.2d 66, 72 (3d Cir.

1984) (quoting *United States v. Baker*, 693 F.2d 183, 189 (D.C. Cir. 1982)); *cf. Rosa v. Att'y*

*Gen. of New Jersey*, 141 F.4th 477, 486 (3d Cir. 2025) (finding that it was "not a close call" that

defense counsel's failure to investigate prior bad acts prejudiced the petitioner, "[g]iven the thin

proof of guilt.").

9

Thus, to prevail on his ineffectiveness claim, Hamilton must show that the Superior Court's decision violated clearly established federal law, *i.e.*, that its holding that trial counsel was not ineffective for failing to call the Jones sisters contravened *Strickland* and its progeny. *See* 28 U.S.C. § 2254(d)(1)-(2); *Knowles*, 556 U.S. at 121-23; *Brown*, 544 U.S. at 141.  He cannot do so.

Turning first to the Superior Court's decision, it assessed Hamilton's ineffectiveness claim starting from base principles.  First, to prove an ineffectiveness claim, Hamilton was required to plead and prove, by a preponderance of the evidence, that:

> [the] ineffectiveness of counsel . . . so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place . . . Appellant must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Hamilton II*, 2021 WL 3878645 at *3 (citing *Commonwealth v. Johnson*, 868 A.2d 1278, 1281 (Pa. Super. 2005)).[6]  Relief is granted "only if a [petitioner] satisfies each of the three prongs. . . [and] we may deny any ineffectiveness claim if the petitioner's evidence fails to meet even a single one of these prongs."  *Id.* (internal citations and quotations omitted).

The Superior Court found that Hamilton could not meet this burden for two reasons. First, "a claim that counsel was ineffective for failing to call certain witnesses . . . lacks arguable merit where the trial court conducted a colloquy of the defendant at trial, and the defendant agreed with the counsel's decision not to present those witnesses."  *Id.* (citing *Commonwealth v. Pander*, 100 A.3d 626, 642-46 (Pa. Super. 2014)).  In Hamilton's case, the trial court conducted

---

[6] The Third Circuit has acknowledged this standard is identical to the *Strickland* standard.  *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000) ("[T]he Pennsylvania standard judging ineffectiveness claims [is] identical to the ineffectiveness standard enunciated by the United States Supreme Court in *Strickland*.").

10

a lengthy colloquy with Hamilton, in which he confirmed that he endorsed defense counsel's witness list and decisions.  Therefore, the Superior Court concluded that his claim lacked arguable merit under *Johnson*'s first element and therefore could not demonstrate ineffectiveness.  *See Hamilton II*, 2021 WL 3878645, at *3-*4.

Despite already disposing of this claim, the Superior Court continued with an alternate ground for denial: trial counsel's failure to call the Jones sisters did not prejudice Hamilton.  *Id.* at *5.  For ineffectiveness claims based on a failure to call witnesses, a petitioner is entitled to relief only if he proves, among other requirements, that the absence of the witness's testimony prejudiced the defendant.  *Id.* (citing *Commonwealth v. Miller*, 868 A.2d 578, 581-82 (Pa. Super. 2005)).  Under Pennsylvania law, prejudice requires showing how the "uncalled witnesses' testimony would have been beneficial under the circumstances of the case."  *Id.* (citing *Commonwealth v. Selenski*, 228 A.3d 8, 16 (Pa. Super. 2020)).

With respect to the sisters' affidavits the Superior Court found that they were, at best, ambivalent.  The twins could identify one of the two men who shot a gun during the fight but also admitted that they could not identify the other, nor speak to Hamilton's location during the shooting.  *Id.* at *5.  In fact, the sisters' affidavits stated that they "did not see [Hamilton] until after the fact, when [he] came and grabbed them to run to a truck."  *Id.*  According to the Superior Court, such testimony would not be exculpatory or otherwise show "it was not [Hamilton] who shot the victims."  In contrast, the Commonwealth mustered four eyewitnesses who specifically identified Hamilton as the shooter.  *Id.*  Since Hamilton "failed to establish that the [sisters'] testimony 'when weighed against the overwhelming evidence of guilt adduced at trial, would have changed the outcome' of his trial[,]" he had not met his burden regarding prejudice.  *Id.*

11

Turning then to the present petition, the Superior Court's decision does not violate clearly established federal law, as an identical result is reached under *Strickland*. Looking first to the Jones sisters' predicted testimony, the two were outside fighting at the time of the shooting.[7] *Hamilton II*, 2021 WL 3878645 at *3. According to their past affidavits, a "heavy-set [B]lack male shot a gun [during the fight, and] a man named Tracy" began shooting as well. *Id.* The sisters did not see Hamilton at all until he "came to take them away to a truck." As they ran to the truck, Tracy and the unidentified man continued shooting at one another. *Id.* At best, this testimony indicates that the sisters did not see Hamilton with a gun or shooting; it does not, however, show that Hamilton was unarmed or never shot anyone.

In contrast, numerous Commonwealth witnesses specifically identified Hamilton as a shooter. Daniel Robinson, who was working security for the party, testified that he encountered Hamilton numerous times during the night. Once the fight broke out, Robinson heard gunshots, turned, and saw Hamilton aiming a silver revolver at him. As Robinson attempted to run away, he saw Hamilton shoot towards him before he felt himself hit. Gregory Brake, a party attendee, testified that when he attempted to break up the fight between LaRose and a Jones sister, Hamilton threatened him with a silver revolver, stating, "if you touch [the sisters], I am going to bust your ass, old head." Brake testified that Hamilton then punched LaRose, knocking her to the ground, before he lost sight of the two in the melee. After the initial gunshots, Brake began ushering people into the bar for cover. As he did so, he saw Hamilton shoot another man twice as the latter lay prone.

LaRose also testified that Hamilton, whom she recognized because of a dark mark on his

---

[7] Hamilton does not attach affidavits from the Jones sisters in his petition, nor are any affidavits present in the state court record. Therefore, all facts and predictions are derived from the Superior Court's discussion of the sisters' predicted testimony.

12

forehead and distinctive teeth, punched her in the face, knocking her to the ground.  As she tried to stand up, he stood over her and shot her in the thigh.  Finally, Leon Baynard, another party attendee, identified Hamilton based on his clothing and characteristic teeth, and testified that he witnessed Hamilton shoot multiple people.

After weighing these sources of evidence, the sisters' testimony was unlikely to change the jury's verdict.  At best, their proffered testimony would indicate Hamilton left the bar during a second round of shooting between Tracy and someone else.  However, it would not contradict the State's evidence that Hamilton was involved in the shootout, nor would it exculpate him.

Therefore, even assuming *arguendo* that trial counsel erred in failing to call the sisters as witnesses, it was not prejudicial to Hamilton.  *See Zarintash*, 736 F.2d at 72; *United States v. Dawson*, 857 F.2d 923, 929-30 (3d Cir. 1988) (finding certain theories of ineffectiveness meritless based on the overwhelming evidence supporting the conviction).  Since Hamilton has not demonstrated prejudice, it is unnecessary to conduct the deficiency inquiry.  *See Gaines*, 33 F.4th at 712.  Accordingly, his Petition shall be denied.

An appropriate order follows.

BY THE COURT:

S/ WENDY BEETLESTONE

_____

WENDY BEETLESTONE, C.J.